# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JIM H.[1]**, | Case No. 3:21-cv-98-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Laurie B. Mapes, PO Box 1241, Scappoose, OR 97056. Of Attorney for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; David J. Burdett, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Jim H. (Plaintiff) brings this action under 42 U.S.C. § 405(g) to obtain judicial review of

the final decision of Defendant (Commissioner) to deny Plaintiff's claim for Disability Insurance

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Benefits (DIB) under Title II of the Social Security Act. For the following reasons, the Commissioner's decision is REVERSED AND REMANDED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

On December 21, 2016, Plaintiff protectively filed applications for DIB and Supplemental Security Income (SSI) disability benefits under Title II and Title XVI of the Social

Security Act, 42 U.S.C. §§ 1381a, 1382c (Act). Plaintiff was 45 years old at the alleged DIB

disability onset date of August 31, 2008. Plaintiff's date last insured for DIB was September 30,

2013.

The Commissioner granted Plaintiff's SSI claim with a disability onset date of

December 21, 2016, the date of the SSI application. The Commissioner denied Plaintiff's DIB

claim initially and upon reconsideration. After requesting a hearing before an administrative law

judge (ALJ), Plaintiff appeared at two hearings[2] in Portland, Oregon before ALJ Vadim

Mozyrsky. The ALJ issued a decision that Plaintiff was not disabled during the period under

consideration for DIB. Plaintiff requested review from the Appeals Council and submitted new

evidence for consideration. The Appeals Council denied Plaintiff's request for review of the

ALJ's decision. The ALJ's decision therefore became the final decision of the Commissioner,

from which Plaintiff seeks review.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

---

[2] Plaintiff first appeared at a hearing before the ALJ on February 12, 2019. The ALJ rescheduled a second hearing for July 17, 2019 to allow Plaintiff to submit documentation from the relevant period. AR 178-80.

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
        significant mental or physical duties done or intended to be done for pay
        or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
        such work, she is not disabled within the meaning of the Act. 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
        substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's
        regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
        impairment or combination of impairments is "severe" if it significantly
        limits the claimant's physical or mental ability to do basic work activities.
        20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
        this impairment must have lasted or be expected to last for a continuous
        period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
        claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
        §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
        impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the
        impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
        then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
        416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
        the listed impairments, the analysis continues. At that point, the ALJ must
        evaluate medical and other relevant evidence to assess and determine the
        claimant's "residual functional capacity" (RFC). This is an assessment of
        work-related activities that the claimant may still perform on a regular and
        continuing basis, despite any limitations imposed by his or her
        impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
        416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
        proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC
        assessment? If so, then the claimant is not disabled. 20 C.F.R.
        §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
        his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in

significant numbers in the national economy? If so, then the claimant is
disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The
Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the
Commissioner must show that the claimant can perform other work that exists in significant
numbers in the national economy, "taking into consideration the claimant's residual functional
capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966
(describing "work which exists in the national economy"). If the Commissioner fails to meet this
burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,
the Commissioner proves that the claimant is able to perform other work existing in significant
numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;
*Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

As an initial matter, the ALJ determined Plaintiff's date last insured, September 30, 2013.
AR 154. At step one of the sequential analysis, the ALJ determined that Plaintiff had not
engaged in substantial gainful activity for the relevant period. *Id.* At step two, the ALJ found that
Plaintiff suffered severe, medically determinable impairments of degenerative disk disease, a
history of right knee anterior cruciate ligament reconstruction, anemia, depression, anxiety, and
narcotic and benzodiazepine dependence. *Id.*

At step three, the ALJ determined that these impairments did not meet or equal the
severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 155. Next,

the ALJ found that during the relevant period Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except Plaintiff "could sit for six hours . . . and stand and walk for four hours in an eight-hour day. He could occasionally climb ramps and stairs, and . . . stoop, kneel, crouch, and crawl. [Plaintiff] could perform simple repetitive, routine tasks, while making simple work-related decisions, and could occasionally interact with the public." AR 157.

Moving to step four, the ALJ found that Plaintiff could not perform any past relevant work because his past relevant work exceeded Plaintiff's RFC for the period under consideration. AR 161. At step five, the ALJ found that during that period, Plaintiff retained the ability to perform the requirements of jobs existing in significant numbers in the national economy, including garment sorter, bench assembler, and small parts assembler. *Id.* The ALJ therefore determined that Plaintiff was not disabled at any time from August 31, 2008 through September 30, 2013 and denied Plaintiff's DIB claim.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) improperly rejecting Plaintiff's psychological and physical symptom testimony; (B) improperly discounting the medical opinion of Plaintiff's examining physician, Dr. Tatsuro Ogisu, M.D.; and (C) improperly concluding that a "simple, repetitive, and routine" work limitation would permit Plaintiff to sustain the mental rigors of full-time work. Plaintiff argues that each error was harmful and asks the Court to remand this case for an award of benefits.

### A.  Plaintiff's Symptom Testimony

#### 1.  Applicable Law

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." Social Security Ruling (SSR) 16-3p, *available at* 2017 WL 5180304, at *6

(Oct. 25, 2017).[3] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when

---

[3] Effective March 28, 2016, SSR 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2 (Mar. 16, 2016). The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2. Plaintiff's Psychological Symptom Testimony

The ALJ's decision recognized Plaintiff's reported symptoms of depression, anxiety, panic attacks, social isolation, fatigue, difficulties with focus and memory, anhedonia, and insomnia. AR 159. Plaintiff testified at the hearing that his social anxiety and panic attacks

interfered with his ability to attend work. AR 188-89. When seeking counseling during the

relevant period, Plaintiff reported experiencing psychological symptoms including hopelessness,

poor memory or confusion, irritability or anger, fear of being away from home, social

discomfort, obsessive thoughts, compulsive behaviors, and lack of motivation. AR 952.

### a.  Specificity of the ALJ's Reasoning

Plaintiff first argues that the ALJ failed to identify and link the specific psychological

symptom testimony that he found inconsistent with the record with particular parts of the record

supporting his determination. The Court agrees that the ALJ failed to sufficiently identify which

of Plaintiff's reported psychological symptoms he rejected, and why.

An ALJ is required to identify what evidence contradicted what specific

testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th

Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not

consistent with the objective medical evidence,' without any 'specific findings in support' of that

conclusion" (quoting *Vasquez*, 572 F.3d at 592)). "[A]n ALJ does not provide specific, clear, and

convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence

in support of his or her residual functional capacity determination" but must "specify which

testimony she finds not credible," and the district court may not "comb the administrative record

to find specific conflicts." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (quoting

*Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014)); *see also Smolen*, 80 F.3d at 1284 ("The

ALJ must state specifically which symptom testimony is not credible and what facts in the record

lead to that conclusion."); *Dodrill*, 12 F.3d at 918 (holding that it is "not sufficient for the ALJ to

make only general findings; he must state which pain testimony is not credible and what

evidence suggests the complaints are not credible"); *Nan B. v. Saul*, 2020 WL 6636221, at *6

(D. Or. Nov. 12, 2020) (finding that the ALJ's summary of the medical record, statement that the

claimant's testimony "was not entirely consistent with the medical evidence and other evidence 'for the reasons explained in this decision,'" and failure to "discuss which testimony about what limitations he is crediting or discrediting, and why" was legal error). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

A reviewing court should "not fault the agency merely for explaining its decision with 'less than ideal clarity,'" however, "we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1099). Although ALJs are "not required to perform a line-by-line exegesis" of the claimant's testimony, an ALJ must "do more" than offer non-specific conclusions that a claimant's testimony is inconsistent with medical evidence. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). If the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly substituting its conclusions for those of the ALJ's or speculating about the grounds for the ALJ's conclusions. *Brown-Hunter*, 806 F.3d at 492.

Here, the ALJ identified three reasons for assigning less than full weight to Plaintiff's psychological symptom testimony: Plaintiff's activities of daily living, Plaintiff's noncompliance with mental health treatment and medication, and lack of support in objective medical evidence. *See* AR 160. The Court will address the sufficiency of those reasons below. Although the ALJ identified specific reasons, he failed to connect those reasons to any specific psychological symptom testimony. The ALJ, instead, simply referred to Plaintiff's psychological symptom testimony "as a whole." This was not sufficiently specific to identify which of Plaintiff's

symptoms or symptom testimony the ALJ found to be not credible. Accordingly, it is legal error. Nonetheless, the Court analyzes the sufficiency of each reason, to the best of the Court's ability to ascertain the ALJ's reasoning.

### b.  Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain mental health conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few

isolated instances of improvement over a period of months or years and to treat them as a basis

for concluding that a plaintiff is capable of working. *See Garrison*, 759 F.3d at 1017.

　　To establish that Plaintiff was not "as limited as alleged" by his psychological symptoms,

the ALJ cited three examples of Plaintiff engaging in activities that the ALJ found inconsistent

with his symptom testimony. *See* AR 160. The Court addresses each of these examples below.

### i.　Plaintiff's 2010 Hunting Trip

　　The ALJ highlighted a treatment note from September 21, 2010, when Plaintiff reported

to his doctor that he was planning a hunting trip with his children, and the treatment note from

October 21, 2010, when Plaintiff reported that he had "fun" on the hunting trip, as evidence of

activity inconsistent with Plaintiff's psychological symptom testimony. *Id.* An isolated instance

of a claimant taking a trip or vacation is not necessarily clear and convincing evidence of

inconsistency with disabling symptom testimony, especially absent evidence that the claimant

engaged in specific activities while on vacation that contradict his or her symptom testimony.

*See Tackett*, 180 F.3d at 1103 (concluding claimant's four-day road trip, alone, without evidence

of how much the claimant drove, or the frequency or duration of the rest stops, or what position

the claimant was in, was insufficient to counter medical opinion testimony that claimant needed

to shift positions every 30 minutes); *see also Wilson v. Comm'r of Soc. Sec.*, 303 Fed. App'x.

565, 566 (9th Cir. 2008) (evidence that claimant "occasionally drove to Phoenix, took a vacation

in Hawaii, and sometimes found the energy to go grocery shopping" was not clear and

convincing evidence that claimant led a life that is not compatible with pain and limitations,

because those undertakings were "sporadic and punctuated with rest").

　　Here, the ALJ did not identify, and the Court is unable to infer, which of Plaintiff's

psychological symptoms were inconsistent with this event because no evidence suggests what

types of activities Plaintiff engaged in while on the trip or the frequency or duration of any

periods of rest. The ALJ also failed to address the information found in the September treatment note that is otherwise consistent with Plaintiff's psychological symptom testimony. This note shows that Plaintiff expressed to his doctor that he was feeling "more overwhelmed by simple tasks" and that he was "dreading the work involved" with the hunting trip. AR 779. This information is consistent with Plaintiff's reported symptoms of disabling anxiety and lack of motivation. AR 952. Finally, Plaintiff reported to his doctor that he was planning a hunting trip with his sons "for the first time," indicating that this was an unusual and isolated event. AR 779. This inference is supported by the lack of evidence cited by the ALJ that Plaintiff took any other trips or vacations during the relevant period. Without explanation as to how this single event was inconsistent with any of Plaintiff's specific psychological symptoms, the Court finds that it is not a clear and convincing reason to reject Plaintiff's psychological symptom testimony in whole or in part.

### ii.  Plaintiff's Childcare Activities

The ALJ, citing the same treatment note from September 21, 2010, stated that at that time Plaintiff "had both his boys (indicating he was caring for them) and that things were going well, despite ongoing mental health symptoms." AR 160. Starting in 2009, Plaintiff lived with his oldest son full-time, and Plaintiff's youngest son lived with him over the summers. AR 754, 758. Plaintiff's children were 14 and 17 years old at that time. AR 752. Plaintiff's oldest son is autistic. AR 160. The ALJ's decision implied that Plaintiff's ability to care for his children was inconsistent with Plaintiff's psychological symptom testimony. *See id.*

Childcare activities that are inconsistent with a claimant's symptom testimony can serve as a valid basis for an ALJ's rejection of that testimony. *Rollins v. Massanari*, 261 F.3d 853 (9th Cir. 2001). The types of activities regularly undertaken by a claimant may affect whether the ALJ properly discredited a claimant's symptom testimony on that basis. *See, e.g.*, *Burch*, 400

F.3d at 680-81 (upholding the ALJ's rejection of symptom testimony because claimant's activities "suggest that she is quite functional. She is able to care for her own personal needs, cook, clean and shop. She interacts with her nephew and her boyfriend. She is able to manage her own finances and those of her nephew"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (upholding the ALJ's rejection of claimant's symptom testimony because of claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for a child); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (concluding that evidence that a claimant could assist with some household chores was not determinative of disability); *Jajo v. Astrue*, 273 Fed. App'x. 658, 661 (9th Cir. 2008) (stating that evidence that the claimant "may go shopping with his wife, take his children to school, visit friends and attend church does not detract" from the claimant's credibility as to his disability).

The Court finds that the ALJ did not provide a clear and convincing reason based on Plaintiff's childcare activities to reject Plaintiff's psychological symptom testimony. First, the same treatment note in which Plaintiff characterized that things were "going well" also reflects Plaintiff's repeated descriptions that he had "no improvement" and that "nothing ever seems to help." AR 779-80. Indeed, the doctor's findings during that visit reflect that Plaintiff's anxiety had not improved and motivation was lower. AR 781. The ALJ ignored these portions of the treatment note, instead only focusing on the "going well" general characterization by Plaintiff instead of the more specific factual information.

Second, the ALJ did not explain what childcare activities were inconsistent with what portions of Plaintiff's testimony. Plaintiff testified to psychological symptoms such as anxiety, depression, panic attacks, insomnia, and fatigue. *E.g.*, AR 159, 188-89, 952. These symptoms are not fundamentally inconsistent with Plaintiff taking care of his teenage sons. Without further

explanation, the Court cannot infer which symptoms are inconsistent with Plaintiff's childcare activities.

Third, rather than detracting from Plaintiff's testimony, evidence instead suggests that childcare responsibilities exacerbated Plaintiff's psychological symptoms. *See, e.g.*, AR 65 (Plaintiff admitted to the ER by his son, who reported Plaintiff had been sleeping for 24 hours and could not be roused); AR 754 (notes from treatment provider describing how Plaintiff's son moving in in 2009 was "creating issues with both him and his son's health. Particularly around [Plaintiff's] own insomnia"); AR 767 (treatment provider notes Plaintiff continues to experience mood swings and is taking Remeron and Effexor, and that Plaintiff is "at home with kids on a roller coaster"). Indeed, the ALJ recognized that Plaintiff reported continuing psychological symptoms despite caring for his children. AR 160 (noting that Plaintiff "had both his boys (indicating he was caring for them) and that things were going well, *despite ongoing mental health symptoms*" (emphasis added)). Other evidence suggests that Plaintiff's psychological symptoms, at times, remained at the same level as before his children moved in with him. AR 792 (treatment provider noted in 2011 that Plaintiff's anxiety had not significantly increased "considering current stresses with son"). This evidence is consistent with Plaintiff's reported psychological symptoms. Because the ALJ did not identify any specific inconsistent evidence relating to Plaintiff's childcare activities and ignored evidence that supports Plaintiff's testimony, the Court cannot uphold this reason for the ALJ's rejection of Plaintiff's psychological symptom testimony.

### iii.  Plaintiff Reported "Getting Out More"

The ALJ also cited Plaintiff's report to his doctor on October 21, 2010 that Plaintiff saw an old friend and was "getting out more." AR 160. The Court infers that the ALJ pointed to this example as evidence of activity inconsistent with Plaintiff's psychological symptom testimony.

In the context of mental health issues, however, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. *See Garrison*, 759 F.3d at 1017. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is an error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* Reports of improvement in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. *Id.* While ALJs must rely on examples to show the reasons why they do not believe a claimant's symptom testimony, the examples they choose "must *in fact* constitute examples of a broader development to satisfy the applicable clear and convincing standard." *Id.* at 18 (emphasis in original).

The ALJ pointed to one example from Plaintiff's voluminous treatment notes as evidence of an activity inconsistent with Plaintiff's symptom testimony. The ALJ cited to no other evidence, nor did the Court find any, that suggests that this example reflected a broader development of improvement with Plaintiff's psychological symptoms. For example, the treatment notes from one month before the example cited show that Plaintiff reported he was "not motivated to do things, like a form of agoraphobia" and that Plaintiff felt "no improvement in wanting to go out and[] feeling anxious about it." AR 779. Two months after the example cited by the ALJ, Plaintiff's treatment provider noted that Plaintiff had "ongoing significant anxiety with a worsening of depression on anti-anxiety SSRI" but Plaintiff "seems to be coping okay" with his symptoms. AR 789. Two months after that, Plaintiff returned to his treatment provider and his chief complaint was anxiety. AR 790. In June 2009, treatment notes show that Plaintiff reported "basically hiding from people" and that he is "not able to get out the door,

doesn't have the energy to fight anxiety." AR 755. In his function report, Plaintiff reported that

he very rarely saw any of his friends and relatives since his alleged disability onset date. AR 413.

Considered as a whole, the record shows that the one positive example of activity cited by the

ALJ was not demonstrative of a broader trend of improvement in Plaintiff's psychological

symptoms. Thus, it does not satisfy the clear and convincing standard that must be met for the

ALJ to assign less than full credit to Plaintiff's psychological symptom testimony.

### c.   Noncompliance with Mental Health Treatment and Improvement

The ALJ's decision referred to Plaintiff's noncompliance with medication

recommendations as a reason to assign less than full weight to Plaintiff's psychological symptom

testimony. AR 160. The amount of treatment is "an important indicator of the intensity and

persistence of [a claimant's] symptoms." 20 C.F.R. § 404.1529(c)(3). The Ninth Circuit has

"long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained

or inadequately explained failure to seek treatment or to follow a prescribed course of

treatment." *Molina*, 674 F.3d at 1113 (9th Cir. 2012) (quoting *Tomasetti*, 533 F.3d at 1039)

(quotation marks omitted). If, however, the claimant has a good reason for not seeking treatment,

failure to seek treatment is not a proper basis for rejecting the claimant's subjective symptoms.

*See* 20 C.F.R. § 404.1530(c); *see also Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("We

certainly agree with all the other circuits that a disabled claimant cannot be denied benefits for

failing to obtain medical treatment that would ameliorate his condition if he cannot afford that

treatment."). Thus, an ALJ must consider a claimant's reasons for failing to adhere to

recommended treatment before making an adverse credibility finding. *See Smolen*, 80 F.3d

at 1284; *see also* SSR 16-3p, 2017 WL 5180304, at *9 (explaining that an ALJ "may need to

contact the individual regarding the lack of treatment or, at an administrative proceeding, ask

why he or she has not complied with or sought treatment in a manner consistent with his or her

complaints" and that the Commissioner "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints").

The ALJ cited a treatment note from May 4, 2010, stating that Plaintiff "stopped his previous antidepressant medication on his own" and this was notable because Plaintiff had shown improvement with treatment, citing a July 12, 2010 treatment note. AR 159. The ALJ, however, left out important contextual information from both cited treatment notes and from Plaintiff's later treatment notes that lead to the conclusion that Plaintiff readily complied with medication recommendations and his mental health symptoms not improve from taking medication.

Plaintiff's primary care doctor, Dr. Linda Cruz,[4] noted on May 4, 2010 that Plaintiff "is very reluctant to try an antidepressant and in fact has stopped his previous antidepressants on his own." AR 767. Dr. Cruz continued, however, stating, "I would like to have him try Zoloft again in combination [with] a sleep medication." *Id.* The treatment note reflects that Dr. Cruz prescribed both Zoloft (Sertraline) and Ambien (a sleep medication) that day. *Id.* Despite Plaintiff's reluctance to try antidepressants, later treatment notes confirm that Plaintiff complied with Dr. Cruz's medication recommendation for his depression, anxiety, and insomnia. On June 6, 2010, Plaintiff saw Dr. Cruz for a follow up appointment, and Dr. Cruz noted that

---

[4] Plaintiff's primary care physician was Dr. Linda Cruz at Providence Medical Group. It appears that Plaintiff may have at times seen other providers, such as Certified Medical Assistants. Dr. Cruz, however, reviewed and signed off on all treatment notes and plans from those visits, and all of Plaintiff's prescriptions were entered and signed by Dr. Cruz. The Court, therefore, references all of Plaintiff's visits at Providence Medical Group as visits with Dr. Cruz, Plaintiff's primary care doctor.

PAGE 18 – OPINION AND ORDER

Plaintiff was "on [Z]oloft not noticing any change." AR 768. Dr. Cruz increased the dosage of Plaintiff's Zoloft at this appointment and changed Ambien to Restoril. *Id.*; AR 770. Further, his regular appointments continued to reflect Xanax (Alprazolam) as a regular medication, in addition to Zoloft and his sleep medication (first Ambien and then Restoril). *See, e.g.*, AR 765, AR 769, AR 770, AR 777.

Regarding Plaintiff's alleged improvement from medications, in the July 12, 2010 appointment, Dr. Cruz reported that Plaintiff "has had some modest improvement in his anxiety in the last month although he is skeptical that it is related to the Zoloft." AR 773. At this appointment, Dr. Cruz again increased Plaintiff's Zoloft dosage. *Id.* Five weeks later, however, on August 19, 2021, Dr. Cruz noted that Plaintiff's symptoms "worsened recently despite being on [Zoloft] 150 mg" and that Plaintiff "has tried every antidepressant that I am aware of including Remeron, Effexor, Wellbutrin, citalopram, Prozac, Paxil, Zoloft, and Cymbalta." AR 776. At this appointment, Dr. Cruz decreased Plaintiff's Zoloft by 50 mg and added Seroquel for his depression and anxiety. AR 776. At Plaintiff's next appointment on September 21, 2010, when he reported that things were "going well," he also reported that he had "no significant changes with [Zoloft]," "no improvement in wanting to go out and feeling anxious about it" and that he was still taking Xanax because he had no improvement. AR 779-80. He stated that "nothing ever seems to help." AR 780. In the doctor's "assessment/plan" section, Dr. Cruz noted: "Anxiety is not improved, motivation is definitely lower than it was." AR 781. The next visit reflected improvement, AR 785, but by December 27, 2010, he was suffering from "significant" depression and anxiety again. AR 789. As discussed above, the record reflects Plaintiff's symptoms waxed and waned as can be expected from psychological symptoms, *see Garrison*, 759 F.3d at 1017, but not that he improved with medication.

Contrary to the ALJ's conclusion that Plaintiff was noncompliant with the medication recommendations from his treatment providers and improved with treatment, the record confirms that Plaintiff was willing to, and did, take numerous different medications and adhere to taking those medications while his treatment providers tried to attain the correct dosage to alleviate his psychological symptoms. The medications were unsuccessful. Because the record does not support the ALJ's finding that Plaintiff was noncompliant with medications or improved with treatment, the Court does not find this to be a clear and convincing reason for assigning less than full weight to Plaintiff's psychological symptom testimony.

### d.  Lack of Support in Objective Medical Evidence

The ALJ stated that Plaintiff "presented within normal limits when examined concerning mental status in a variety of clinical contexts" as evidence inconsistent with Plaintiff's psychological symptom testimony. AR 160. An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's [symptoms]." *Rollins*, 261 F.3d at 857. The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). Because the Court does not uphold the ALJ's reasoning about Plaintiff's activities of daily living and noncompliance with treatment recommendations, the Court cannot uphold the ALJ's rejection of Plaintiff's psychological symptom testimony solely based on lack of support in objective medical evidence.

### 3.  Physical Symptom Testimony

Plaintiff testified at his hearing that during the relevant period his back and leg pain caused him to spend most of his time in bed, for a total of 16 to 18 hours per day, because lying down relieved the chronic pain. AR 193, 408. Plaintiff testified that he would be unable to perform the ALJ's hypothetical job putting shoes into shoe boxes for more than one or two hours per day because his back and neck pain would not allow him to stand or sit for that long. AR 190. Plaintiff also testified that his pain precluded him from lifting more than ten pounds. AR 195. Medical records indicate that Plaintiff sought treatment during the relevant period for severe migraine headaches and reported that he suffered from migraines two to three times per week. *See, e.g.*, AR 17, 408, 475, 755. Plaintiff complained of abdominal pain and vomiting during the relevant period. *See, e.g.*, AR 686, 690, 707, 723. Plaintiff also reported neck and back pain, and particularly sciatic pain. *See, e.g.*, AR 227, 768, 770, 772, 793, 844, 980. Plaintiff also reported experiencing symptoms of fatigue resulting from anemia diagnosed within the relevant period. *See, e.g.*, AR 486.

### a.  The Specificity of the ALJ's Reasons

As with Plaintiff's psychological symptoms, Plaintiff argues that the ALJ failed to identify and link Plaintiff's physical symptom testimony with specific evidence in the record supporting the decision to assign less than full weight to that testimony. The ALJ connected *some* specific portions of Plaintiff's physical symptom testimony with evidence in the record when deciding to assign less than full credit to those symptoms. The ALJ cited "a number of benign, or broadly normal, signs claimant exhibited upon physical examination" as "not at all consistent with the claimant's allegations Plaintiff's testimony that he spent most of his time in bed, in a broadly sedentary lifestyle." AR 159. This is a sufficiently clear link to allow the Court to review the adequacy of this reason to reject Plaintiff's testimony about spending most of the

time in bed. The ALJ also linked evidence of normal range of musculoskeletal motion to Plaintiff's leg pain testimony as a reason to assign less than full credit to that symptom. *Id.*

Plaintiff alleged other physical symptoms, however, that the ALJ either did not sufficiently link to evidence in the record or failed to address at all. For example, the ALJ stated that by April 2013, medical providers noted that Plaintiff's anemia was mild and that his primary symptom was fatigue. *Id.* Anemia, however, is not the only explanation for fatigue. Plaintiff alleged numerous physical symptoms, chronic pain, and was taking a significant cocktail of medications, all of which could contribute to fatigue. The fact that medical evidence did not support that Plaintiff continued to be significantly anemic in and of itself does not foreclose that Plaintiff continued to suffer from fatigue. The ALJ does not otherwise discuss Plaintiff's fatigue symptoms or link that testimony to any specific evidence supporting the ALJ's rejection of that testimony. Further, the ALJ did not specifically link Plaintiff's back and neck pain symptoms to evidence in the record. The ALJ did not address Plaintiff's migraine symptoms at all, nor did he discuss Plaintiff's severe abdominal pain and vomiting. Because the ALJ did not link the remaining physical symptom testimony to specific evidence in the record, the Court cannot engage in meaningful review of the ALJ's reasons for assigning less than full weight to that testimony. This was legal error.

### b.  New Evidence Submitted to the Appeals Council

Plaintiff submitted new evidence to the Appeals Council, and the Appeals Council considered this new evidence when deciding whether to grant Plaintiff's review. The new evidence Plaintiff submitted includes medical records from before and during the relevant period. These medical records consist of primary care treatment notes, records related to Plaintiff's sleep disorder evaluations, and Plaintiff's independent medical evaluations and other documentation related to the workers' compensation claim from the injury that triggered the

onset Plaintiff's alleged disability. *See generally* AR 12-148. When the Appeals Council considers new evidence in deciding whether to grant review of the ALJ's disability determination, that evidence becomes part of the administrative record that the district court must consider when reviewing the Commissioner's final decision for substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012); *see also Lingenfelter*, 504 F.3d at 1030 n.2 (noting that when the Appeals Council considers new evidence in denying a claimant's request for review, the reviewing court considers both the ALJ's decision and the new evidence submitted to the Council). The parties dispute the effect of the new evidence on the Court's evaluation of the ALJ's decision.

The Commissioner asserts three examples from the new evidence that allegedly undermine Plaintiff's pain testimony and support the ALJ's decision. First, the Commissioner points to new evidence from July 2009 when Plaintiff reported to his worker's compensation treatment provider that he had been laid off and was "[n]ow looking for work." AR 36. The Commissioner argues that searching for work after the alleged disability onset date undermines Plaintiff's symptom testimony and constitutes a legitimate basis for rejecting a claim of disability. Second, the new evidence includes notes from Dr. Douglas Bald, M.D., who examined Plaintiff in relation to his workers' compensation claim, in which Dr. Bald opined that Plaintiff had "symptom magnification" on examination. AR 94. The Commissioner argues that this new evidence of symptom magnification supports the ALJ's decision to assign less than full credit to Plaintiff's physical pain testimony. Finally, the Commissioner asserts that Dr. Bald's objective findings in the new evidence are consistent with the ALJ's decision. Plaintiff argues that Dr. Bald's clinical findings, instead, were supportive of Plaintiff's symptom testimony and that

the Commissioner engaged in improper post hoc reasoning by supplying reasons that the ALJ did not rely on in his determination.

The Court agrees with Plaintiff that the Commissioner asserts post hoc reasons based on the new evidence. Although the Court must consider the new evidence, *see Brewes*, 682 F.3d at 1163, the Court must also disregard the Commissioner's post hoc explanations, *see Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). The Court is persuaded that the proper treatment of the new evidence is to evaluate the ALJ's *existing reasons* in light of this new evidence. *See, e.g.*, *Bolden v. Colvin*, 2014 WL 63926, at *4 (N.D. Okla. Jan. 8, 2014) ("The Court may not allow the Commissioner to offer alternate or post hoc justifications based on the new evidence, but the Court must consider only the rationale used by the Commissioner to deny the plaintiff's claim."); *Braunstein v. Berryhill*, 2017 WL 923901, at *9 (C.D. Cal. Mar. 8, 2017) ("The Court will not substitute the Commissioner's post-hoc explanations discounting the new evidence for the reasons actually given in the ALJ's opinion.").

The ALJ did not discuss Plaintiff seeking work during the relevant period as a reason to discredit Plaintiff's physical symptom testimony. Thus, the Court cannot affirm the ALJ's decision on that ground. Nor did the ALJ discuss allegations of Plaintiff's symptom magnification as reason to discredit Plaintiff's physical symptom testimony, thus, the Court cannot affirm on that ground, either. The ALJ, however, *did* discuss the lack of support in objective medical evidence as a reason to assign less than full credit to Plaintiff's physical

symptom testimony. The Court will evaluate this reason in light of the new evidence made available to the Appeals Council.

### c.  Lack of Support in Objective Medical Evidence

As a reason to assign less than full weight to Plaintiff's physical symptom testimony, the ALJ pointed to clinical examinations showing that Plaintiff exhibited normal physiological signs. AR 159. As discussed in the Court's examination of Plaintiff's psychological symptom testimony, lack of support in objective medical evidence alone is not a sufficient reason to assign less than full credit to Plaintiff's symptom testimony. *See Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2). The ALJ needed to identify reasons beyond simply a lack of support in the objective evidence. The ALJ erred by rejecting Plaintiff's physical symptom testimony on that basis alone.

## B.  Dr. Ogisu's Opinion

### 1.  Applicable Law

An ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit and the Commissioner[5] distinguish between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison*, 759 F.3d at 1012. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R. § 404.1527(c)(1), (2). If a treating physician's opinion is supported by medically acceptable

---

[5] Because Plaintiff filed his application before March 17, 2017, the application is governed by 20 C.F.R. §§ 404.1527 and 416.927, and the revised rules relating to the consideration of medical opinion testimony do not apply.

techniques and is not inconsistent with other substantial evidence in the record, a court gives the

treating physician's opinion controlling weight. *Holohan*, 246 F.3d at 1202; see also 20 C.F.R.

§ 404.1527(d)(2). A court may reject a treating doctor's uncontradicted opinion only for "clear

and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If

the opinion of another physician contradicts a treating doctor's opinion, the ALJ must provide

"specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

      In addition, the ALJ generally must accord greater weight to the opinion of an examining

physician than that of a non-examining physician. *Orn*, 495 F.3d at 631; *see also* 20 C.F.R.

§ 404.1527(c)(1). As with the opinion of a treating physician, the ALJ must provide "clear and

convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v.*

*Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of another physician contradicts the

opinion of an examining physician, the ALJ must provide "specific, legitimate reasons" for

discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th

Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a

nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and

those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179,

184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

      Specific, legitimate reasons for rejecting a physician's opinion may include its reliance

on a claimant's discredited subjective complaints, inconsistency with medical records,

inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or

that the opinion is brief, conclusory, and inadequately supported by clinical findings.

*Bray*, 554 F.3d at 1228; *Tommasetti*, 533 F.3d at 1040; *Andrews*, 53 F.3d at 1042-43. An ALJ

errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more

than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*¸ 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan*, 169 F.3d at 602 (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

## 2. Analysis

When Plaintiff filed applications for DIB and SSI disability benefits, the state agency charged with initial disability determinations sent Plaintiff to Dr. Ogisu for a comprehensive neurological examination. Dr. Ogisu examined Plaintiff on August 9, 2017, and issued a report. AR 972-78. Based on his clinical examination and evaluation, Dr. Ogisu opined that Plaintiff's impairments would translate to functional limitations during an eight-hour workday. AR 977. These functional limitations included that Plaintiff could sit up to six hours in an eight-hour workday, stand or walk for less than six hours, and "lift and carry up to 15 pounds occasionally" and lift and carry "at least 5 but less than 10 pounds frequently." *Id.* The functional limitations

Dr. Ogisu described would limit Plaintiff to the category of sedentary work. *See* SSR 83-10, *available at* 1983 WL 31251, at *5-6 (Jan. 1, 1983).

Dr. Ogisu's opinion was contradicted by the state medical consulting physician, Dr. Peter A. Bernardo. AR 160. Thus, because Dr. Ogisu is an examining physician, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Ogisu's opinion. *See Lester*, 81 F.3d at 830. The sole reason cited by the ALJ for assigning no weight to Dr. Ogisu's opinion was because his examination of Plaintiff took place several years after Plaintiff's date last insured. AR 161. The ALJ stated that Dr. Ogisu's opinion "concerned the claimant's functional state outside of the relevant period and [is] therefore of no probative value" to the ALJ's determination.[6] *Id.* Plaintiff argues that the ALJ improperly rejected Dr. Ogisu's opinion and formulated a contradictory RFC for a legally insufficient reason.

Contrary to the ALJ's assertion, "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Lester*, 81 F.3d at 832 (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)). Further, when the "medical assessment encompasse[s]" the relevant period, then rejecting the doctor's "opinion because [the ALJ] believed it to concern a time after [the claimant's] insurance expired" is "improper." *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011). Evidence generated and obtained after the expiration of a claimant's insured status may demonstrate the severity of the claimant's impairments during the relevant period of time.

---

[6] The ALJ also disregarded the opinion of Dr. Kim Goodale, Psy.D., for this same reason. AR 161. Because Plaintiff only challenges the ALJ's rejection of Dr. Ogisu's medical opinion, the Court considers arguments about the sufficiency of the ALJ's reasoning as it pertains to Dr. Goodale's opinion to be waived. *See, e.g.*, *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief.").

*Taylor*, 659 F.3d at 1232; *see also Jacqueline L. v. Berryhill*, 2019 WL 1922525, at *9 (D. Or. April 30, 2019).

Here, the ALJ improperly concluded that Dr. Ogisu's opinion was "of no probative value" simply because it was issued after Plaintiff's date last insured. The Commissioner, however, argues that the Ninth Circuit and the District of Oregon have "reiterated" that such a report must relate back to the period under consideration, citing two recent unpublished cases. *See Anderson v. Saul*, 818 Fed. App'x. 709, 711 (9th Cir. 2020) (affirming the ALJ's rejection of part of a doctor's opinion because it "described [the claimant's] limitations as of 2008 and 2010, rather than during the adjudicative period, which ended in 2003"); *Shauna O. v. Kijakazi*, 2021 WL 3081057, at *6-7 (D. Or. July 21, 2021) (affirming the ALJ's rejection of the doctor's evaluation as not relevant to the insured period because the record did not support that the doctor had "concluded that the limitations he identified were present before [the claimant's] date last insured" and, to the contrary, the doctor had affirmatively opined that the claimant "cannot sustain gainful employment 'at this time [i.e., August 2018] or in the near future'").

*Anderson* and *Shauna O.* are distinguishable because Dr. Ogisu's comprehensive neurological report is not limited in time to only the time of his report. Dr. Ogisu examined Plaintiff, reviewed Plaintiff's longitudinal medical records, and specifically discussed Plaintiff's historical medical condition, particularly relating to his chronic back pain, which began in 1993 or 1994. AR 973-74. Dr. Ogisu also discussed Plaintiff's numerous treatments for his back pain over the years, including medications, injections, radiofrequency ablation, and physical therapy and acupuncture from "many years ago." AR 974. Dr. Ogisu also specifically noted Plaintiff's peroneal nerve injury from the 1990s. *Id.* Dr. Ogisu's findings included: (1) "chronic lower back pain"; (2) "chronic opioid therapy"; (3) "right peroneal nerve injury"; (4) "tremor"; (5) "left-

sided hearing loss"; and (6) "decreased cervical range of motion." AR 977. It is clear from

Dr. Ogisu's discussion and findings, that his findings relate to conditions Plaintiff has had for

years, not conditions present only as of the date of the report. Thus, even if the Commissioner's

interpretation of the burden required for an opinion issued after the date last insured to be

relevant were correct, it is met here.

The ALJ erred by refusing to consider Dr. Ogisu's report merely because it was issued

after Plaintiff's date last insured. The ALJ's error was harmful because it was consequential to

the ALJ's ultimate disability determination, and there is a substantial likelihood that Plaintiff

suffered prejudice because of this error. *See Molina,* 674 F.3d at 1115 (an error is harmless if it is

"inconsequential to the ultimate nondisability determination"); *see also Robbins*, 466 F.3d at 885

(noting that an error is harmless if it is "clear from the record the error was inconsequential to the

ultimate non-disability determination").

## C.  ALJ's Findings at Step Three and the RFC Formulation

### 1.  Applicable Law

The RFC is the most a person can do, despite her physical or mental impairments. 20

C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically

determinable impairments, including those that are not "severe," and evaluate "all of the relevant

medical and other evidence," including the claimant's testimony. *Id*.; *see also* SSR 96-8p,

*available at* 1996 WL 374184, at *5 (July 2, 1996). In determining a claimant's RFC, the ALJ is

responsible for resolving conflicts in the medical testimony and translating the claimant's

impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539

F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be

incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the

vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

An ALJ's assessment may "adequately capture[] restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174. *Stubbs-Danielson* is inapposite, however, in cases when the medical evidence establishes that the plaintiff has restrictions in concentration, persistence, or pace that are not captured in the RFC. *Brink v. Comm'r Soc. Sec. Admin.*, 343 Fed. App'x. 211, 212 (9th Cir. 2009). When an ALJ makes a finding of moderate limitation in concentration, persistence, or pace at step three, those limitations must be reflected in the RFC assessment. *See Lubin v. Comm'r, Soc. Sec. Admin.*, 507 Fed. App'x. 709, 712 (9th Cir. 2013) ("The ALJ must include all restrictions in the [RFC] determination . . . including moderate limitations in concentration, persistence, or pace").

### 2.  Analysis

In his step three determination, the ALJ noted that Plaintiff reported difficulties with concentration and completing tasks. AR 156. The ALJ then listed examples from the record evidence that allegedly undermined Plaintiff's reported difficulties in this area. *Id.* Ultimately, the ALJ determined that "[o]verall, the evidence of record indicates the claimant experiences an at most moderate limitation when concentrating persisting or maintaining pace." *Id.* The ALJ translated these findings at step three into Plaintiff's RFC by limiting Plaintiff to "simple, repetitive, and routine" work. *Id.* Plaintiff argues that ALJ erred in the formulation of the RFC because it does not adequately capture the limitation the ALJ found at step three.

The parties dispute whether *Stubbs-Danielson* or *Brink* and *Lubin* apply in this situation. Determination of this issue depends on whether the RFC adequately captures the limitations described in the medical evidence. Here, no medical evidence from any source limited Plaintiff's functional abilities in the category of concentration, persistence, or pace. The ALJ nonetheless determined that Plaintiff had a "moderate" limitation in that category and translated that finding

into a "simple, repetitive, and routine tasks" limitation. The ALJ reasonably translated the

moderate finding at step three into a functional limitation in Plaintiff's RFC, and no medical

evidence contradicts this determination. This is sufficient under *Stubbs-Danielson, Brink*, and

*Lubin*, and the ALJ did not err.

### D. Remand and the Credit-As-True Doctrine

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210.

Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775

F.3d at 1099-1100. The issue turns on the utility of further proceedings. A court may not award

benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been

improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security

Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this

Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error

and then reviews the record as a whole to determine whether the record is fully developed, the

record is free from conflicts and ambiguities, and there is any useful purpose in further

proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has

been fully developed and there are no outstanding issues left to be resolved does the district court

consider whether the ALJ would be required to find the claimant disabled on remand if the

improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its

discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however,

and is not required to credit statements as true merely because the ALJ made a legal error. *Id.*

at 408.

Plaintiff urges the Court to exercise its discretion and credit the evidence the ALJ improperly rejected as true. The Court, however, finds that there are outstanding issues left to be resolved and the record has not been fully developed. Therefore, the appropriate disposition is to remand this matter to the ALJ for further proceedings.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 10th day of December, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge